**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X     Index No.
BRIAN VILLANUEVA,

                                         Plaintiff,

                    -against-                                         **COMPLAINT**

FFO GROUP, LLC, PHILIP FALCONE, *Individually*, and
LISA FALCONE, *Individually*,                                         **PLAINTIFF DEMANDS**
                                                                      **TRIAL BY JURY**
                                         Defendants.
-----------------------------------------------------------------------X

        Plaintiff BRIAN VILLANUEVA, by and through his attorneys, Nisar Law Group, P.C.,

hereby complains of Defendants, upon information and belief as follows:

<u>**NATURE OF THE CASE**</u>

1.      Plaintiff complains pursuant to 42 U.S.C. § 1981 and the New York City Human Rights

        Law, New York City Administrative Code § 8-107, *et seq.* ("NYCHRL"), and seeks

        damages to redress the injuries he has suffered as a result of being **<u>Unlawfully</u>**

        **<u>Retaliated Against.</u>**

2.      Plaintiff also asserts a claim for **<u>breach of contract</u>** under New York common law,

        seeking monetary relief, including interest, disbursements and costs, due to Defendants'

        failure to abide by the terms of an agreement entered into between the parties.

<u>**JURISDICTION AND VENUE**</u>

3.      Jurisdiction of this Court is proper under 28 U.S.C. §§ 1331 and 1343.

4.      The Court has supplemental jurisdiction over Plaintiff's claims brought under city law

        and common law pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as it is a judicial district

        in which all defendants reside.

## PARTIES

6.      At all times relevant, Plaintiff BRIAN VILLANUEVA ("Plaintiff") was and is a resident of the State of New York and Kings County.

7.      At all times relevant, Defendant FFO GROUP, LLC ("FFO GROUP") was and is a domestic limited liability company duly existing pursuant to, and by virtue of, the laws of the State of New York.

8.      At all times relevant, Defendant PHILIP FALCONE ("PHILIP FALCONE") was and is a co-owner of Defendant FFO GROUP.

9.      At all times relevant, Defendant LISA FALCONE ("LISA FALCONE") was and is a co-owner of Defendant FFO GROUP.

10.     Defendants FFO GROUP, PHILIP FALCONE, and LISA FALCONE shall be herein referred to collectively as "Defendants."

## MATERIAL FACTS

11.     The claims brought in the instant action are for unlawful retaliation and breach of contract.  First, however, some background is given for context.

12.     On November 6, 2019, Plaintiff filed an action in U.S. District Court for the Southern District of New York bearing the case number 1:19-cv-10307 (JMF) (the "lawsuit"). Plaintiff thereafter filed an amended complaint in the lawsuit on December 16, 2019 (at ECF #6).

13.     In brief, the facts which formed the basis for the claims raised in the lawsuit were that Plaintiff had been hired as a chef for Defendants and had been caused to suffer an unlawful hostile work environment on the basis of his race (Asian) and on the basis of his association with a black person which culminated in a constructive discharge, as well as

being unlawfully retaliated against.  Plaintiff also brought claims under the Fair Labor Standards Act and New York Labor Law arising from alleged non-payment of owed wages.

14.    As to the allegations surrounding the existence of a hostile work environment, Plaintiff alleged, in pertinent part, that Defendants acquiesced to and encouraged an unlawful hostile work environment in which Plaintiff's Asian race was mocked in that the accent and tone of Asians' speech was imitated in a stereotypically destructive manner and jokes were made about Asians eating dogs in Plaintiff's known presence. Plaintiff also alleged that Defendant LISA FALCONE referred to his girlfriend (who is black) as a "chocolate-covered marshmallow," said that she (Defendant LISA FALCONE) was surprised the girlfriend "speaks well and seems educated" (despite being black), and thereafter used the n-word in describing the girlfriend to Plaintiff, culminating in Plaintiff suffering a constructive discharge.

15.    The lawsuit was ultimately resolved between the parties via a private settlement agreement (attached hereto as Exhibit 1).  The terms of this settlement included a payment by Defendants to Plaintiff in the amount of $60,000 within 30 days of the date Plaintiff executed the agreement and sent it to Defendants' counsel (Section 1.2).  As part of the consideration for Defendants entering into that agreement, Plaintiff agreed to dismiss, with prejudice, all claims against Defendants which were raised in the lawsuit (Section 4).  Defendants signed the agreement on March 15, 2020; Plaintiff signed on May 17, 2020, and it was supplied to Defendants' counsel that same day (i.e., March 17, 2020).  As such, per the agreement, funds were due to be paid to Plaintiff no later than April 16, 2020.  The lawsuit was dismissed with prejudice by order of that Court on

March 27, 2020.

16.     To date, Defendants have violated, and continue to violate, the terms of the agreement by refusing to pay any funds pursuant to it.  This constitutes a breach of contract.

17.     Furthermore, Plaintiff alleges here that Defendants' continuous and willful violations of the payment provisions of the agreement constitute unlawful retaliation.  This is evidenced by Defendants' rationale for non-payment, as well as their prior threats for retaliation and actual acts of retaliation against Plaintiff.

18.     First, Defendants' rationale for non-payment has been that Defendants simply don't have the funds to pay.  In fact, on April 14, 2020, Defendants (through counsel) stated that they would not be making payment by the due date (of April 16, 2020) and it was because Defendant PHILIP FALCONE doesn't have the money.  This issue was revisited on April 28, 2020, and it was again stated that Defendants (though counsel) wouldn't be paying because Defendant PHILIP FALCONE lacked the funds.  However, on this date (April 28, 2020), the issue of enforcement of the settlement agreement was also discussed, to which it was emphasized by Defendants that no lawsuit could be commenced in light of New York State courts not allowing the filing of any new lawsuits due to Covid-19.  (This prohibition was thereafter lifted effective May 25, 2020).

19.     However, Defendants' averment that they have no money is simply not believable.  Upon information and belief, Defendant PHILIP FALCONE is a billionaire and is the founder and chief investment officer of Harbinger Capital (a multi-billion-dollar hedge fund).  It was also reported in the Wall Street Journal that in June 2019, Defendants PHILIP and LISA FALCONE sold their Upper East Side townhouse for a then-New York City record of approximately $80 million.  Nevertheless, because Defendants have placed their

finances squarely at issue with respect to their reasoning for non-payment, Defendants'
liquidity will be discoverable.

20.     Second and furthermore, Defendants have a history of threatening retaliation or actually
engaging in retaliation against Plaintiff, which notably took the form of threatening to
*reveal* that Plaintiff was a pedophile and/or a terrorist (of which he is neither) if he
commenced/ continued with the lawsuit.

21.     The lawsuit itself and the fact that Plaintiff took issue with Defendants' actions and
conduct particularly incensed Defendants, namely Defendant PHILIP FALCONE.  This
anger and desire to retaliate against Plaintiff manifested primarily in threats that if any
legal action was commenced (or if any proceeded forward) that Defendants would cast
him as a sex offender and/ or a terrorist, and weaponize Defendant PHILIP and LISA
FALCONE's youth daughters to assist in this.

22.     In fact, prior to the lawsuit having been filed, a letter of representation was sent to
Defendants in late-August 2019.  In response, Defendant PHILIP FALCONE emailed
Plaintiff and wrote:

"I am also in [the] process of retaining a professional investigation unit, Bo Dietl
Investigations, Inc. with whom I have cc'd, to potentially interview the children to
ascertain whether there was any issue with Mr. Villanueva during their study
periods when they were often alone with him in the home."

"The children" to whom Defendant PHILIP FALCONE referenced were his two youth
daughters.  Also, as stated, CC'd on this email was Bo Dietl—the former New York City
police officer-turned-private investigator who previously worked for Fox News and was
allegedly hired by former chairman and CEO Roger Ailes to investigate and discredit
some of the women who had accused network executives (including himself) of sexual
harassment.

Near the end of this email, Defendant PHILIP FALCONE also wrote:

"I can say that if any litigation includes anything with respect to my children, [you] will realize that [you] picked the fight with the wrong guy."

23.   Plaintiff did not respond to this email.

24.   Thereafter, on October 1, 2019, Defendant PHILIP FALCONE called Plaintiff's attorney on the telephone.   During this conversation, Defendant PHILIP FALCONE told Plaintiff's attorney that an investigation into Plaintiff had been completed and that he (meaning Plaintiff) "would not like what was uncovered."   When Plaintiff's attorney asked Defendant PHILIP FALCONE to be more specific, Defendant PHILIP FALCONE demurred, instead threatening that Plaintiff would "find out."

25.   Shortly thereafter, on October 7, 2019, Plaintiff spoke with the friend of his who had originally put Plaintiff and Defendants in touch with one another about Plaintiff working for the Falcones in the job underlying the lawsuit.   Specifically, this friend told Plaintiff that Defendant LISA FALCONE had contacted him (i.e., the friend) for the purpose of "getting dirt" on Plaintiff, emphasizing that she said they needed any information they had on Plaintiff.

26.   As mentioned above, the lawsuit was filed on November 6, 2019.

27.   That same day (i.e., November 6, 2019), Defendant PHILIP FALCONE emailed Plaintiff at 4:49 PM the following:



28.   Plaintiff did not respond to this email.   Nevertheless, the following day (i.e., on November 7, 2019), Defendant PHILIP FALCONE emailed Plaintiff at 2:16 PM.   The

body of that email read: "Care to see it??" and attached was a digital photo of what appeared to be the table of contents page of a "report."   The email is below:



29.     As mentioned, attached to this email was a photo, which is enlarged here:



30.     Plaintiff understood this to be a .jpeg of the table of contents page of a "report," and on this page there is handwritten and underlined in red ink the words "Interesting Summary," and in the bottom left-hand corner it read, in part: "Brian Villanueva" and was circled.  This page also included two hand-written stars next to the categories "Sex Offender Research – Nationwide," and "Patriot Act."

31.     By way of background, sex offender registration guidelines provide comprehensive federal and state law requirements in order to maintain a system for monitoring and tracking convicted sex offenders following release from incarceration into the community.  Further, the U.S.A. Patriot Act (referred to shorthand as the Patriot Act) was

a law passed in 2001 in the wake of the September 11 attacks in order to combat terrorism.

32.     Plaintiff understood this email to be a threat that if Plaintiff didn't drop this legal matter, Defendants would cast him as a sex offender and/ or a terrorist, which coincided with prior threats made by Defendant PHILIP FALCONE that his youth daughters would make things up about Plaintiff suggesting that he engaged in inappropriate activities of the sexual nature in their presence.

33.     In essence, after Defendant PHILIP FALCONE learned that Plaintiff was standing up for his legal rights and that he was considering pursuing legal action, Defendant PHILIP FALCONE weaponized his daughters and concocted a fake story which he threatened to be delivered by them (i.e., the daughters) as an intimidation tactic in an attempt to scare Plaintiff from proceeding forward, threatening that his daughters would accuse Plaintiff (falsely it should be noted) that Plaintiff is a pedophile and engaged in inappropriate conduct of the sexual nature when their parents (i.e., Defendants PHILIP and LISA FALCONE) weren't around.

34.     Plaintiff neither is nor ever has been a sex offender, nor a terrorist for that matter, and Defendants know this.  Further, Plaintiff has never engaged in any inappropriate sexual conduct around anyone's children (much less the Falcones'), and the allegations and/or insinuations by Defendant PHILIP FALCONE were baseless attempts to intimidate, bully, and scare Plaintiff from pursuing legitimate legal claims against Defendants, and were retaliatory in nature.

35.     The foregoing demonstrates a pattern and history of Defendants threatening and/or engaging in retaliation for accusing Defendants of discrimination, and threatening

Plaintiff to dissuade him from bringing and/or continuing a lawsuit against them, and now, to punish him for actually bringing one.

36.     In sum and upon information and belief, Defendants became aware of the no-new-court filings protocol in New York State and decided to retaliate against Plaintiff via non-payment, believing that he would have no recourse to enforce his rights.  *At best*, Defendants saw an opportunity to keep their money by avoiding to pay a legitimate debt owed to Plaintiff by exploiting a global pandemic, or *at worst*, Defendants engaged in another act of retaliation against Plaintiff for standing up for himself and his girlfriend against the Falcones' repeated racist actions and his thereafter pursuance of legitimate legal claims.

37.     Here, the facts which form the basis for the retaliation claims demonstrate the failure to live up to the terms of the settlement agreement, which are adequately alleged. Defendants have not paid plaintiff the money for which that agreement provides.  Under the circumstances and given the history of Defendants' threats and/or actions, as well as the rationale given for non-payment (which is simply unbelievable), a jury could fairly infer retaliation if the evidence sustains the facts pleaded here.

38.     Plaintiff has been damaged due to Defendants' breach of contract and due to Defendants' unlawful retaliation.

39.     Defendants' actions and conduct were intentional and intended to harm Plaintiff.

40.     As a result of Defendants' retaliatory treatment of Plaintiff, he has suffered emotional distress.

41.     As a result of the above, Plaintiff has been damaged in an amount in excess of the jurisdiction of the Court.

42.     Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.  As such, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## FOR RETALIATION UNDER 42 U.S.C. § 1981

43.     Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

44.     By the acts and practices described above, Defendants retaliated against Plaintiff for his opposition to unlawful discrimination under 42 U.S.C. § 1981.

45.     Defendants acted with malice and/or reckless indifference to the statutorily protected rights of Plaintiff.

46.     As a result of Defendants' retaliatory act, Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress, and other compensable damage unless and until this Court grants relief.

## AS A SECOND CAUSE OF ACTION FOR RETALIATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

47.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

48.     The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer ... to discharge ... or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter..."

49.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(7) by retaliating against Plaintiff because of Plaintiff's

opposition to the unlawful employment practices of Plaintiff's employer.

**AS A THIRD CAUSE OF ACTION**
**BREACH OF CONTRACT**

50.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

51.    Plaintiff and Defendants entered into a Confidential Settlement Agreement, which constitutes an enforceable contract.

52.    Plaintiff fulfilled his obligations pursuant to the terms of the contract.

53.    Defendants failed to abide by their obligations under the contract.

54.    As a result of Defendants' breach of the agreement, Plaintiff has suffered damages.

**JURY DEMAND**

55.    Plaintiff requests a jury trial on all issued to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against all Defendants:

A.   Declaring that Defendants engaged in unlawful practices prohibited by 42 U.S.C. § 1981 and the New York City Human Rights Law;

B.   Awarding damages to Plaintiff for Defendants' unlawful practices and to otherwise make him whole for any losses suffered as a result of such unlawful practices, including liquidated damages and interest;

C.   Awarding Plaintiff compensatory damages for mental and emotional, distress, pain and suffering and injury to his reputation in an amount to be proven;

D.   Awarding Plaintiff punitive damages;

E.   Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F.   Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

proper to remedy the Defendants' unlawful employment practices.

Dated:  New York, New York
        June 1, 2020

                                          **NISAR LAW GROUP, P.C.**

                              By:    _____
                                     Casey Wolnowski
                                     *Attorneys for Plaintiff*
                                     570 Lexington Ave., 16th fl.
                                     New York, NY 10022
                                     Ph: (646) 449-7210
                                     Fax: (877) 720-0514
                                     Email: cwolnowski@nisarlaw.com

13